## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MEDPOINTE HEALTHCARE INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 06-164 (SLR) |
| | ) |
| APOTEX INC. and APOTEX CORP., | ) **JURY TRIAL DEMANDED** |
| | ) |
| Defendants. | ) |

## ANSWER OF APOTEX INC. AND APOTEX CORP. TO
## PLAINTIFF'S AMENDED COMPLAINT, AFFIRMATIVE DEFENSES
## AND COUNTERCLAIMS

Defendants, Apotex Inc. and Apotex Corp., Answer the Amended Complaint of

Plaintiff, MedPointe Healthcare Inc., as follows:

### PARTIES

1.      Plaintiff MedPointe Healthcare Inc. ("MedPointe") is a Delaware
corporation having a place of business at 265 Davidson Avenue, Somerset, New Jersey
08873.

**ANSWER:**    Apotex Inc. and Apotex Corp. state that they are without

knowledge or information sufficient to form a belief as to the truth of these averments in

this paragraph.

2.      Upon information and belief, Defendant Apotex Inc. is a corporation
organized and existing under the laws of Canada, having a place of business at 380 Elgin
Mills Road East, Richmond Hill, Ontario, Canada L4C 5H2.

**ANSWER:**    Admit that Apotex, Inc. is a corporation organized and existing

under the laws of Canada and having a place of business at 380 Elgin Hills Road East,

Richmond Hill, Ontario, Canada L4C 5H2.

3.      Upon information and belief, Defendant Apotex Inc. manufactures
numerous generic drugs for sale and use throughout the United States, including in this
judicial district.

**ANSWER:**    Deny, except to admit that Apotex Inc. manufactures generic drug products that are approved by the United States Food and Drug Administration ("FDA") and that the approved drug products are sold in the United States.

4.    Upon information and belief, Defendant Apotex Corp. is a corporation organized and existing under the laws of the State of Delaware, having a place of business at 2400 North Commerce Parkway, Suite 400, Weston, Florida 33326.

**ANSWER:**    Admit.

5.    Upon information and belief, Apotex Corp. is the United States agent for Apotex Inc. for purposes including, but not limited to, making regulatory submissions to the United States Food and Drug Administration ("FDA").

**ANSWER:**    Admit that Apotex Corp. is the United States agent for Apotex Inc. in matters relating to ANDA 77-954 arising before the United States Food and Drug Administration.  Admit that Apotex Corp. is the United States agent for Apotex Inc. for service of process.  Apotex denies all other allegations of paragraph 5.

6.    Upon information and belief, Apotex Corp. is the United States marketing and sales agent for Apotex Inc. wherein, following FDA approval of an Abbreviated New Drug Application ("ANDA"), Apotex Inc. manufactures and supplies the approved generic drug products to Apotex Corp., which then markets and sells those products throughout the United States, including in this judicial district, following any FDA approval.

**ANSWER:**    Deny, except to admit that following FDA approval of the proposed drug product, Apotex Corp. intends to sell Azelastine Hydrochloride Nasal Spray (the "proposed drug product") in the US.

7.    Upon information and belief, and consistent with its practice with respect to other generic products, Apotex Inc. will sell the generic product accused of infringement in this Complaint through Apotex Corp. throughout the United States, including in this judicial district, following any FDA approval.

**ANSWER:**    Deny, except to admit that following FDA approval of the proposed drug product, Apotex Inc. intends to supply Apotex Corp. with the proposed drug product for sale in the US.

8.    Upon information and belief, Apotex Corp. is the United States subsidiary and alter ego of Apotex Inc. Upon information and belief, for purposes of this action, Apotex Inc. and Apotex Corp. are effectively the same entity and are referred to collectively hereinafter as Apotex.

**ANSWER:**    Deny, except to admit that Apotex Inc. and Apotex Corp. are

related companies and that Plaintiff may refer to them collectively as Apotex even though

they are separate entities.


## NATURE OF THE ACTION

9.    This is a civil action for the infringement of United States Patent No. 5,164,194 ("the '194 patent"). This action is based upon the Patent Laws of the United States, 35 U.S.C. §100 *et seq.*

**ANSWER:**    This paragraph contains MedPointe's characterization of its action

and to which no answer is required, but insofar as an answer is required, deny.


## JURISDICTION AND VENUE

10.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

**ANSWER:**    Admit.

11.    This Court has personal jurisdiction over Apotex Corp. by virtue of, *inter alia*, the fact that Apotex Corp. is a Delaware corporation.

**ANSWER:**    Admit.

12.    This Court has personal jurisdiction over Apotex Inc. by virtue of, *inter alia*: (1) its presence in Delaware through its United States subsidiary and alter ego, Apotex Corp., which is a Delaware corporation; (2) its systematic and continuous contacts with Delaware, including its contacts with its United States subsidiary and alter ego and that entity's substantial and ongoing sale of numerous generic drugs in Delaware; and (3) its performance of acts, either directly or through an agent, that have caused tortuous injury in Delaware in connection with a persistent course of conduct with its United States subsidiary and alter ego.

**ANSWER:**    Deny, except to admit that this Court has personal jurisdiction over

Apotex, Inc. for this matter.

13.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), (c) and (d) and 1400(b).

**ANSWER:**    Apotex admits that venue in this district is proper for this action

## THE PATENT

14.    On November 17, 1992, the '194 patent, titled "Azelastine Containing Medicaments," was duly and legally issued to Asta Pharma AG as assignee. Since August 16, 2002, MedPointe has been, and continues to be, the sole owner of the '194 patent and the sole owner of the right to sue and to recover for any infringement of that patent. A copy of the '194 patent is attached hereto as Exhibit A.

**ANSWER:**    Deny that the '194 patent was duly and legally issued on

November 17, 1992. Admit that a document purporting to be U.S. Patent Number

5,164,194 was attached to the Complaint, and that Asta Pharma AG is listed thereon as

assignee. With regard to the remaining allegations, Apotex Inc. and Apotex Corp. state

that they are without knowledge or information sufficient to form a belief as to the truth

of these averments, which has the effect of denial reasonably based on lack of

information and belief.

## ACTS GIVING RISE TO THIS ACTION

15.    Upon information and belief, on or about November 14, 2005, Apotex submitted ANDA 77-954 to the FDA under § 505(j) of the Federal Food, Drug and Cosmetic Act (21 U.S.C. § 355(j)).

**ANSWER:**    Deny, expect to admit that Apotex Inc. submitted ANDA 077954

to the FDA under §505 of the Federal Food, Drug and Cosmetic Act (21 U.S.C. § 335) on

or about November 14, 2005.

16.    ANDA 77-954 seeks the FDA approval necessary to engage in the commercial manufacture, use, offer for sale and sale of a generic nasal spray product containing 0.1% azelastine hydrochloride in an aqueous solution for use in treating, *inter alia*, seasonal rhinitis ("the Generic Product"). ANDA 77-954 specifically seeks FDA approval to market the Generic Product prior to the expiration of the '194 patent.

4

**ANSWER:**    Admit that ANDA 77-954 seeks the FDA approval necessary to engage in the commercial manufacture, use, offer for sale and sale of a nasal spray product containing 0.1% azelastine hydrochloride in an aqueous solution having the name Azelastine Hydrochloride Nasal Spray (the "proposed product") for use in treating, *inter alia*, seasonal rhinitis, and that ANDA 77-954 specifically seeks FDA approval to market the proposed drug product prior to the expiration of the '194 patent. The remaining allegations are denied.

17.    ANDA 77-954 contains an allegation under § 505(j)(2)(A)(vii)(IV) of the Federal Food, Drug and Cosmetic Act that the claims of the '194 patent are either invalid, unenforceable and/or not infringed by the manufacture, use or sale of the Generic Product. MedPointe received written Notification of ANDA 77-954 and its § 505(j)(2)(A)(vii)(IV) allegation on January 27, 2005.

**ANSWER:**    Admit that ANDA 77-954 contains an allegation under § 505(j)(2)(A)(vii)(IV) of the Federal Food, Drug and Cosmetic Act that the claims of the '194 patent are either invalid, unenforceable and/or not infringed by the manufacture, use or sale of the proposed drug product. Apotex Inc. and Apotex Corp. state that they are without knowledge or information sufficient to form a belief as to the truth of the remaining averments, which has the effect of denial reasonably based on lack of information and belief.

18.    In the written notification of ANDA 77-954, Apotex Inc. designated Apotex Corp. as its "agent in the United States authorized to accept service of process for Apotex."

**ANSWER:**    Admit that in the written notification of ANDA 77-954, Apotex Inc. designated Apotex Corp. as its "agent in the United States authorized to accept service of process for Apotex."

19.    Upon information and belief, and consistent with its practice with respect to other generic products, Apotex Inc. has designated Apotex Corp. as its agent in the

United States for purposes of filing ANDA 77-954 and for marketing and selling the Generic Product in the United States upon any approval of ANDA 77-954.

**ANSWER:**    Deny, except to admit that Apotex Inc. has designated Apotex

Corp. as its agent in the United States in ANDA 77-954 to the extent required by FDA

regulations and for service of legal process.

20.    Apotex's submission of ANDA 77-954 to the FDA, including the § 505(j)(2)(A)(vii)(IV) allegation, constitutes infringement of the '194 patent under 35 U.S.C. § 271(e)(2)(A). Moreover, if Apotex commercially makes, uses, offers to sell or sells the Generic Product within the United States, or imports the Generic Product into the United States or induces or contributes to any such conduct during the term of the '194 patent, it would further infringe the '194 patent under 35 U.S.C. § 271(a), (b) and/or (c).

**ANSWER:**    Admit that Apotex Inc. submitted ANDA 77-954 to the FDA,

including the § 505(j)(2)(A)(vii)(IV) allegation. All other averments of this paragraph

are denied.

21.    Even if Apotex Inc. and Apotex Corp. are not treated as a single entity for purposes of this action, which they should be, each of them is nonetheless jointly and severally liable for the infringement of the '194 patent.

**ANSWER:**    Deny.

22.    Apotex Inc. is jointly and severally liable for the infringement of the '194 patent. This is so because, upon information and belief, Apotex Inc. submitted ANDA 77-954 to the FDA under § 505(j) of the Federal Food, Drug and Cosmetic Act (21 U.S.C. § 355(j)) and will, *inter alia*, manufacture, offer to sell and sell the Generic Product upon receipt of any FDA approval of ANDA 77-954.

**ANSWER:**    Deny that Apotex Inc. is jointly and severally liable for the

infringement of the '194 patent. Admit that Apotex Inc. submitted ANDA 77-954 to the

FDA under § 505(j) of the Federal Food, Drug and Cosmetic Act (21 U.S.C. § 355(j))

and intends to, *inter alia*, manufacture the proposed drug product upon receipt of FDA

approval of ANDA 77-954.

23.    Apotex Inc.'s submission of ANDA 77-954 to the FDA, including the § 505(j)(2)(A)(vii)(IV) allegation, constitutes infringement of the '194 patent under 35

U.S.C. §271(e)(2)(A). Moreover, if Apotex Inc. commercially makes, uses, offers to sell or sells the Generic Product within the United States, or imports the Generic Product into the United States, or induces or contributes to any such conduct during the term of the '194 patent, it would further infringe the '194 patent under 35 U.S.C. § 271(a), (b) and/or (c).

> **ANSWER:**    Admit that Apotex Inc. submitted ANDA 77-954 to the FDA, including the §505(j)(2)(A)(vii)(IV) allegation. All other averments of this paragraph are denied.

24.    Apotex Corp. is jointly and severally liable for the infringement of the '194 patent, regardless of which Apotex entity actually filed ANDA 77-954 and regardless of whether it is treated as the alter ego of Apotex Inc. for purposes of this action. This is so because, upon information and belief, Apotex Corp. participated in, contributed to, aided, abetted and/or induced the submission of ANDA 77-954 and its § 505(j)(2)(A)(vii)(IV) allegation to the FDA and will, *inter alia*, offer to sell and sell the Generic Product within the United States and this judicial district upon receipt of any FDA approval of ANDA 77-954.

> **ANSWER:**    Deny, except to admit that if ANDA 77-954 is approved, it is expected that Apotex Corp. would offer to sell and sell the proposed drug product in the United States.

25.    Apotex Corp.'s participation in, contribution to, aiding, abetting and/or inducement of the submission of ANDA 77-954 and its § 505(j)(2)(A)(vii)(IV) allegation to the FDA constitutes infringement of the '194 patent under 35 U.S.C. § 271 (e)(2)(A). Moreover, if Apotex Corp. commercially makes, uses, offers to sell or sells the Generic Product within the United States, or imports the Generic Product into the United States, or induces or contributes to any such conduct during the term of the '194 patent, it would further infringe the '194 patent under 35 U.S.C. § 271(a), (b) and/or (c).

> **ANSWER:**    Deny.

26.    Apotex had actual and constructive notice of the '194 patent prior to filing ANDA 77-954.

> **ANSWER:**    Deny, except to admit that Apotex Inc. and Apotex Corp. had access to the FDA Orange Book which listed the '194 patent.

27.    MedPointe will be irreparably harmed by Apotex's infringing activities unless those activities are enjoined by this Court. MedPointe does not have an adequate remedy at law.

**ANSWER:**   Deny.

## AFFIRMATIVE DEFENSES

## FIRST DEFENSE: INVALIDITY

28.     The '194 patent is invalid and/or unenforceable on grounds specified in United States Code, Title 35, including failure to comply with one or more of the requirements of 35 U.S.C. §§ 101, 102, 103, and/or 112.

## SECOND DEFENSE: ANTICIPATION

29.     The '194 patent is invalid under 35 U.S.C. § 102 over prior art including, but not limited to, United States Patents No. 3,813,384 and 4,704,387.

## THIRD DEFENSE: OBVIOUSNESS

30.     The '194 patent is invalid under 35 U.S.C. § 103 over prior art including, but not limited to, United States Patents No. 3,813,384, 4,704,387, 3,878,217, 4,254,129, 4,313,931, 4,430,343, Pecoud, A., et al., *International Archives of Allergy and Applied Immunology* (1987), Vol. 82, pp 541-543, Feinberg, S. M., *Transactions American Academy of Ophthalmology and Otolaryngology* (1950) Vol. 124, pp. 283-286, Pipkorn, U., et al., *Allergy* (1985) Vol. 40, pp. 491-496, Vanden Bussche, G., *Drugs of the Future* (1986) Vol. 11, pp. 841-843, Bende, M., et al., *Allergy* (1987), Vol. 42, pp. 512-515, Diamantis, W., et al., *Pharmacologist* (1981) Vol. 23, p. 149, Diamantis, W., et al., *Pharmacologist* (1982) Vol. 24, p. 200 (abstract no. 82 574 presented at ASPET meeting Louisville Kentucky, Aug 15-19 1982), and Kubo, N. et al., *Jpn. J. Pharmacol.* (1987) Vol. 43, pp. 277-82. The '194 patent is obvious in view of these references either individually, in combination with the knowledge of the person having ordinary skill in the art, or in combination with each other.

8

## FOURTH DEFENSE: UNENFORCEABILITY

31.    The '194 patent is unenforceable as procured through inequitable conduct.
In violation of their duty of candor to the United States Patent & Trademark Office
("PTO"), applicants for that patent misled the PTO about the properties of the alleged
invention claimed therein.  More particularly, circumstances constituting the applicants'
inequitable conduct include, but are not limited to affirmative misrepresentation
regarding the benefits of azelastine administered as a nasal spray.

32.    The '194 patent asserts that the surprising feature of the invention is that
the azelastine formulations of the '194 patent cause neither somnolence nor the bitter
taste side effects of previous azelastine formulations.  However, bitter taste is a well
known side-effect of azelastine intranasal spray, as disclosed in, for example, *Curr. Med.
Res. Opin.* (1997), Volume 14, No. 1, pp 21.  MedPointe admits in its product insert for
Astelin® brand azelastine nasal spray (attached as Exhibit A) indicates that major side
effects include bitter taste (19.7% of individuals), somnolence (11.5% of individuals) and
fatigue (2.3% of individuals).

33.    Also, during prosecution, the applicants argued, as an indicium of non-
obviousness, that azelastine more effectively inhibited liberation of histamine compared
with the prior art, the compound of Example 1 of United States Patent No. 4,704,387
even though Example 4 was closer to azelastine.  A reasonable opportunity for further
investigation or discovery is likely to provide evidentiary support and further evidentiary
support that such acts were done with the intent to mislead the PTO and to fraudulently
extend patent protection of azelastine.

## FIFTH DEFENSE: MISUSE

34.    The '194 patent is invalid and obtained fraudulently and by inequitable

conduct. MedPointe submitted the '194 patent to the FDA to be listed among Approved

Drug Products With Therapeutic Equivalence Evaluation (also known as the "Orange

Book") as covering azelastine hydrochloride. MedPointe also has commenced this

infringement action against Apotex. MedPointe's efforts to enforce the '194 patent, by

infringement suits and by listing that patent in the Orange Book, constitute patent misuse.

## <u>COUNTERCLAIMS</u>

35.    Apotex Inc. and Apotex Corp. adopt by reference, repeat, and reallege

their specific responses and averments in paragraphs 1–26 above as if fully set forth

herein.

## PARTIES AND JURISDICTIONS

36.    MedPointe has alleged that MedPointe Healthcare Inc. ("MedPointe") is a

Delaware corporation having a place of business at 265 Davidson Avenue, Somerset,

New Jersey 08873.

37.    Apotex, Inc. is Canadian corporation having a place of business at 150

Signet Drive, Weston, Ontario, Canada M9L 1 T9.

38.    Apotex Corp. is a Delaware corporation having a place of business at

place of business at 2400 North Commerce Parkway, Suite 400, Weston, Florida 33326.

39.    MedPointe manufactures and sells a pharmaceutical product under the

trade name Astelin® that is a solution of azelastine hydrochloride for intranasal

administration.

40.    MedPointe was formed in 2001 when the healthcare division of Carter-Wallace was sold.  One of the products included in the portfolio that became MedPointe was azelastine nasal spray.

41.    MedPointe obtained approval from the Food and Drug Administration ("FDA") to market its Astelin® product pursuant to a New Drug Application ("NDA") 20-114 submitted by Carter-Wallace.

42.    MedPointe has represented to the FDA that the '194 patent claims the use of the drug azelastine as a nasal spray.

43.    Relying in part on NDA 20-114, Apotex Inc. has submitted an Abbreviated New Drug Application ("ANDA") No. 77-954 for a proposed drug product containing azelastine hydrochloride for intra-nasal administration.

44.    Pursuant to 21 U.S.C. § 355(j)(2)(A)(vii) and 21 C.F.R. § 314.95, Apotex Inc. and Apotex Corp. have certified to MedPointe that the '194 patent is invalid, unenforceable, and/or will not be infringed by the manufacture, use, or sale of the new drug for which ANDA 77-954 is submitted.

45.    MedPointe has commenced this civil action against Apotex Inc. and Apotex Corp. alleging patent infringement.

46.    This case arises under the Constitution, laws, or treaties of the United States, viz., 35 U.S.C. §§ 1–376, which is an Act of Congress relating to patents, and 21 U.S.C. 355, which provide subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338(a).

47.    A real, actual, and justiciable controversy exists between Apotex Inc. and Apotex Corp. on the one hand and MedPointe on the other hand regarding the invalidity of the '194 patent and Apotex' non-infringement thereof, constituting a case of actual

controversy within the jurisdiction of this Court under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202 (2005).

## COUNT I — DECLARATION OF INVALIDITY

48.    Apotex Inc. and Apotex Corp. adopt by reference, repeat, and reallege their specific responses and averments in paragraphs 1–47 above as though set forth fully herein.

49.    The '194 patent is invalid and/or unenforceable on grounds specified in United States Code, Title 35, including failure to comply with one or more of the requirements of 35 U.S.C. §§ 101, 102, 103, and/or 112.

## COUNT II — DECLARATION OF ANTICIPATION

50.    Apotex Inc. and Apotex Corp. adopt by reference, repeat, and reallege its specific responses and averments in paragraphs 1–49 above as though set forth fully herein.

51.    The '194 patent issued Nov. 17, 1992 from Patent Application number 07/551,644 filed July 12, 1990, which purported to be a continuation of Patent Application number 07/268,772, filed November 9, 1988 and subsequently abandoned, and purports to claim priority from the German Patent Application number 373681 filed Nov. 13, 1987.

52.    United States Patent No. 3,813,384 is prior art with regard to the '194 patent under one or more of the provisions of 35 U.S.C. § 102.

53.    United States Patent No. 4,704,387 are prior art with regard to the '194 patent under one or more of the provisions of 35 U.S.C. § 102.

12

54.    The '194 patent is invalid under 35 U.S.C. § 102 over prior art including, but not limited to, the prior art listed in ¶¶ 54-55 above.

## COUNT III — DECLARATION OF OBVIOUSNESS

55.    Apotex Inc. and Apotex Corp. adopt by reference, repeat, and reallege their specific responses and averments in paragraphs 1–54 above as though set forth fully herein.

56.    The scope and content of the prior art includes, but is not limited to, United States Patents No. 3,813,384, 4,704,387, 3,878,217, 4,254,129, 4,313,931, 4,430,343, Pecoud, A., et al., *International Archives of Allergy and Applied Immunology* (1987), Vol. 82, pp 541-543, Feinberg, S. M., *Transactions American Academy of Ophthalmology and Otolaryngology* (1950) Vol. 124, pp. 283-286, Pipkorn, U., et al., *Allergy* (1985) Vol. 40, pp. 491-496, Vanden Bussche, G., *Drugs of the Future* (1986) Vol. 11, pp. 841-843, Bende, M., et al., *Allergy* (1987), Vol. 42, pp. 512-515, Diamantis W, et al., *Pharmacologist* (1981) Vol. 23, p. 149, Diamantis W, et al., *Pharmacologist* (1982) Vol. 24, pp. 200, and Kubo N et al., *Jpn. J. Pharmacol.* (1987) Vol. 43, pp. 277-82. The '194 patent is obvious in view of these references either individually, in combination with the knowledge of the person having ordinary skill in the art, or in combination with each other.

57.    The differences between the subject matter claimed in the '194 patent and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

## COUNT IV — DECLARATION OF UNENFORCEABILITY

58.    Apotex Inc. and Apotex Corp. adopt by reference, repeat, and reallege their specific responses and averments in paragraphs 1–57 above as though set forth fully herein.

59.    In violation of their duty of candor to the United States Patent & Trademark Office ("PTO"), applicants for the '194 patent misled the PTO about the properties of the alleged invention claimed therein. More particularly, circumstances constituting the applicants' inequitable conduct include, but are not limited to affirmative misrepresentation regarding the benefits of azelastine administered as a nasal spray.

60.    The '194 patent asserts that the surprising feature of the invention is that the azelastine formulations of the '194 patent cause neither somnolence nor the bitter taste side effects of previous azelastine formulations. However, bitter taste is a well known and common effect of azelastine nasal spray administration, as disclosed in, for example, *Curr. Med. Res. Opin.* (1997), Volume 14, No. 1, pp 21. MedPointe admits in its product insert for Astelin® brand azelastine nasal spray (attached as Exhibit A) indicates that major side effects include bitter taste (19.7% of individuals), somnolence (11.5% of individuals) and fatigue (2.3% of individuals).

61.    Also, during prosecution, the applicants argued, as an indicium of non-obviousness, that azelastine more effectively inhibited liberation of histamine compared with the prior art, the compound of Example 1 of United States Patent No. 4,704,387 even though Example 4 was closer to azelastine. A reasonable opportunity for further investigation or discovery is likely to provide evidentiary support and further evidentiary

14

support that such acts were done with the intent to mislead the PTO and to fraudulently extend patent protection of azelastine.

62.    A reasonable opportunity for further investigation or discovery is likely to provide evidentiary support and further evidentiary support that the foregoing misrepresentations and failure to disclose material prior art as set forth above were done with intent to mislead the PTO.

63.    The facts and circumstances set forth in this Count IV constitute inequitable conduct on the part of Applicants, making the '194 patent unenforceable.

64.    A reasonable opportunity for further investigation or discovery is likely to provide evidentiary support for other and further circumstances constituting inequitable conduct by the applicants.

## DEMAND FOR JUDGMENT AND PRAYER FOR RELIEF

WHEREFORE, Apotex Inc. and Apotex Corp. pray for judgment:

a.    Finding that the '194 patent is invalid and unenforceable;

b.    Finding that the '194 patent is not infringed;

c.    Finding that this is an exceptional case under 35 U.S.C. § 285;

d.    Awarding to Apotex Inc. and Apotex Corp. its costs, expenses, and reasonable attorneys' fees and other relief the Court deems just.

## DEMAND FOR JURY TRIAL

Apotex Inc. and Apotex Corp. demand trial by jury for all issues triable by jury as a matter of right.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

A. Sidney Katz
Robert B. Breisblatt
Steven E. Feldman
Michael A. Krol
Brian J. Sodikoff
WELSH & KATZ, LTD.
120 S. Riverside Plaza, 22nd Floor
Chicago, IL  60606
Tel:    (312) 655-1500
Fax:    (312) 655-0008
askatz@welshkatz.com
rbbreisblatt@welshkatz.com
sefeldman@welshkatz.com
makrol@welshkatz.com
bjsodikoff@welshkatz.com

Dated:  April 14, 2006
728036 / 30136

By: */s/ Richard L. Horwitz*
    Richard L. Horwitz (#2246)
    Kenneth L. Dorsney (#3726)
    Hercules Plaza 6th Floor
    1313 N. Market Street
    P.O. Box 951
    Wilmington, DE  19899
    Tel:  (302) 984-6000
    rhorwitz@potteranderson.com
    kdorsney@potteranderson

*Attorneys for Defendants
Apotex Inc. and Apotex Corp.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Richard L. Horwitz, hereby certify that on April 14, 2006, the attached

document was hand delivered on the following persons and was electronically filed with

the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the

following and the document is available for viewing and downloading from CM/ECF:

Frederick L. Cottrell, III
Alyssa M. Schwartz
Matthew W. King
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

I hereby certify that on April 14, 2006, I have Electronically Mailed the

foregoing document(s) to the following non-registered participants:

John M. Desmarais
Peter J. Armenio
Maxine Y. Graham
Kirkland & Ellis LLP
Citigroup Center
153 East 53rd Street
New York, NY 10022
jdesmarais@kirkland.com
parmenio@kirkland.com
mgraham@kirkland.com

/s/ Richard L. Horwitz
Richard L. Horwitz
Kenneth L. Dorsney
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
Wilmington, DE 19801
(302) 984-6000
rhorwitz@potteranderson.com
kdorsney@potteranderson.com

700765